FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC 01 2010

P.M.
TIME A.M.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

KURT MILLER, :

                       Petitioner, :

    -against- :

JOSEPH T. SMITH, Superintendent, Shawangunk :
Correctional Facility,
                                :

                      Respondent. :

-------------------------------------------------------------- x

**MEMORANDUM & ORDER**

05-CV-5976 (ENV)

**VITALIANO, D.J.**

      On February 7, 2000, petitioner Kurt Miller was convicted of two counts of kidnapping in the second degree, two counts of robbery in the first degree, and two counts of robbery in the second degree. He was sentenced to 25 to 50 years in prison. Petitioner has filed this timely pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 claiming that: (1) trial counsel was ineffective for failure: (a) to properly argue a speedy trial motion; (b) to challenge the trial court's ruling regarding right to counsel at the lineup; (c) to seek suppression of palm print forensic evidence; (d) to raise the issue of prosecutorial misconduct before the grand jury; (e) to object to jury misconduct during deliberation; and (f) to object to the court's Allen charge; (2) the prosecutor acted unlawfully in refusing to admit petitioner's exculpatory evidence before the grand jury; (3) the right to counsel was denied to him at a lineup; (4) the lineup was unduly suggestive; (5) the prosecutor was guilty of misconduct while examining witnesses and during summations; (6) the evidence was insufficient to support the conviction; (7) the prosecutor violated Brady for failing to disclose certain (a) ATM surveillance videos and still photographs and (b) bank records; and (8) appellate counsel was ineffective for failing to argue that trial



1

counsel was ineffective in failing to file a timely alibi notice. For the reasons that follow, the writ is denied.

## I. BACKGROUND

### A. Crime and Conviction

In the early morning of March 30, 1997, Cecile Ibe and Johnald Mariano were returning home. After Mariano parked his car, two men accosted them at gunpoint, forced them back into the car and ordered them to drive away. The assailants also stole the two victims' wallets, cash, bank cards, and mobile phones. Over several hours, Mariano was forced to drive to numerous locations, including a Chase Manhattan bank where Ibe was ordered to make ATM withdrawals using her and Mariano's bank cards. At this point, however, Ibe was able to see this perpetrator's face in the well-lit ATM vestibule. They all then drove to a secluded location, where Ibe was tied up and raped in the car, while Mariano was bound, blindfolded, and locked in the trunk.

Police later arrested and charged petitioner and an accomplice, Celso Castillo. The investigation revealed that the call log from Ibe's stolen mobile phone included a call at 5 a.m. the morning of the crime to petitioner's girlfriend in Fort Lauderdale, Florida. Ibe also identified petitioner in a photo array. Miller was arrested on April 29, 1997. In an in-person lineup on April 30, 1997, Ibe identified him as the man who had robbed her, forced her to withdraw money from the ATM, and raped her; Mariano also identified Miller as the man who had robbed them. Additionally, Miller's palm print matched a palm print taken inside Mariano's car.

After trial, the jury convicted petitioner of the kidnapping and robbery counts and was unable to reach a verdict on the rape charge, which was later dismissed. Castillo had previously pled guilty.

2

## B.    Post-Conviction Procedural History

Miller's appeal brief in May 2002 argued: (1) the trial court erroneously denied his motion to dismiss the indictment on state law speedy trial grounds; (2) the indictment should have been dismissed because the prosecutor refused to introduce exculpatory evidence at the grand jury; (3) the identification testimony should have been suppressed because he was denied the right to counsel at the lineup; (4) the identification testimony should have been suppressed because the lineup was suggestive, as he was the only person wearing a "long-sleeved print shirt"; (5) the sentence was excessive; (6) the kidnapping charges should have been dismissed pursuant to the merger doctrine; (7) the prosecutor made inflammatory remarks during trial; (8) the evidence was legally insufficient; (9) the prosecutor violated Rosario; and (10) the prosecutor withheld Brady material.  On October 7, 2002, the Appellate Division affirmed petitioner's conviction, holding that the trial court properly denied the motion to dismiss the indictment pursuant to New York Criminal Procedure Law § 30.30.  People v. Miller, 298 A.D.2d 409, 751 N.Y.S.2d 384 (2d Dep't 2002).  The court added that "defendant's remaining contentions are either unpreserved for appellate review or without merit."  Miller, 298 A.D.2d at 410, 751 N.Y.S.2d at 385.  On April 9, 2004, the Court of Appeals denied petitioner's application for leave to appeal.  People v. Miller, 2 N.Y.3d 764, 778 N.Y.S.2d 782 (2004).

On October 28, 2004, petitioner filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, arguing that the prosecutor improperly testified at the grand jury and acted improperly in refusing to submit evidence to the grand jury that Miller contends was exculpatory.  Further, petitioner argued that his counsel provided ineffective assistance at trial by: (1) incorrectly arguing the speedy trial motion and the issue of prosecutorial misconduct at the grand jury; (2) failing to challenge the court's ruling regarding

3

petitioner's right to counsel at the lineup; (3) failing to move to suppress the palm print evidence; (4) failing to object to "unauthorized deliberation"; and (5) failing to object to the court's <u>Allen</u> charge. On February 2, 2005, Supreme Court denied the motion to vacate, finding the claims had either been decided on direct appeal or were without merit. Miller's application for leave to appeal the adverse § 440 decision to the Second Department was denied on September 7, 2005.

Petitioner filed a pro se petition for a writ of error coram nobis in the Second Department on February 1, 2005, arguing ineffective assistance of appellate counsel. Petitioner contended that his counsel provided ineffective assistance by: (1) failing to file a timely alibi notice; (2) failing to object to the jury's unauthorized deliberation; and (3) failing to object to the trial court's <u>Allen</u> charge. The Second Department denied coram nobis relief on May 31, 2005, holding that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." <u>People v. Miller</u>, 18 A.D.3d 886, 795 N.Y.S.2d 467 (2d Dep't 2005). On October 31, 2005, the Court of Appeals denied petitioner's application for leave to appeal. <u>People v. Miller</u>, 5 N.Y.3d 854, 840 N.E.2d 143 (2005). About six weeks later, the instant petition was filed. Petitioner and respondent agree that the petition is timely and that petitioner properly exhausted all of his state court claims. (People's Br. 12-14; Pet'r Reply Br. 1.)

## II.    STANDARD OF REVIEW

This petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a federal writ of habeas corpus may not be granted to a state prisoner on any claim adjudicated on the merits by a state court unless the decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). This is

4

commonly referred to as "AEDPA deference." Gutierrez v. McGinnis, 389 F.3d 300, 304 (2d Cir. 2004). AEDPA deference limits federal habeas relief to cases where "the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (citation omitted). Summary dispositions by a state court are considered to be on the merits for AEDPA purposes. See Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006) ("[A] state court's rejection of a federal claim as 'either unpreserved for appellate review or without merit' . . . is deemed to rest on the merits of the federal claim . . ."), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523). To be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) (citation omitted). For a state court's application of law to be unreasonable, it must be not only "incorrect or erroneous" but also "objectively unreasonable." Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (quotation omitted); see also Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (an "unreasonable" application must involve "[s]ome increment of incorrectness beyond error"). Moreover, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

Miller first argues that trial counsel, Fitzmore Harris, Esq., provided constitutionally ineffective assistance for the host of grievances listed above. In denying his § 440 motion, Supreme Court held petitioner's claims had either been rejected on direct appeal or were meritless. The Court will thus review these claims with AEDPA deference. See Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006).[1]

In determining ineffective assistance claims under AEDPA, it is well-settled that Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), and its progeny constitute the pertinent "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001); Sellan, 261 F.3d at 314-15. Consequently, the question presented is whether the state court adjudication of the claim involved an "unreasonable application" of the Strickland standard to the facts of the petitioner's case. See Sellan, 261 F.3d at 314-15 & n.6.

In Strickland, the Supreme Court held that "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Under Strickland, to establish ineffective assistance of counsel, a habeas petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (quotation omitted).

---

[1]     However, even if the Court were to review these claims *de novo*, the result would be the same.

6

To establish subpar performance, a habeas petitioner must overcome the "strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (quotation omitted). The presumption is overcome only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. To demonstrate prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S. Ct. at 2068.

The state court determinations that Miller's counsel performed within the constitutional standard of acceptability are neither contrary to, nor unreasonable applications of, Strickland. The Court addresses each of petitioner's arguments in turn.

Miller begins by contending that his trial counsel incorrectly calculated the number of days the trial was delayed by the court or prosecution, causing him to lose his motion to dismiss the indictment on speedy trial grounds. Yet it is clear that trial counsel raised this issue and appellate counsel then devoted seven pages of the direct appeal brief to it. (Def.'s App. Br. 29-36.) In essence petitioner asks on habeas review that this Court second-guess the way counsel presented the argument; such hindsight review of the implementation of strategy does not demonstrate ineffective assistance. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. In any case, Miller does not articulate nor does the record present facts that would support an exception to this rule.

Indeed, Miller's theories regarding the ineffectiveness of trial counsel rely on a laundry list of similarly doomed hindsight objections. For example, he asserts that counsel failed to

7

challenge a trial court denial of his motion to suppress the lineup identification on right to counsel grounds. Yet it is clear that counsel did, in fact, raise this issue, in a pretrial omnibus motion, at a resulting suppression hearing, and again on direct appeal. (Def.'s App. Br. 39-42.) Other than disputing the outcome, the petition provides no argument or evidence as to *how* "counsel's performance fell below an objective standard of reasonableness." Carrion, 549 F.3d at 588. Again, regarding the admission of the palm print evidence, counsel *did* challenge the evidence at trial on at least four occasions: conducting a voir dire of the proffering witness (Tr. 600-07), noting a contemporaneous exception to the admission of the exhibit (Tr. 607), cross-examining the proffering witness (Tr. 608-13), and arguing against the reliability of the evidence in his summation (Tr. 1019-20). As to this evidence, petitioner's argument fails the most minimal Strickland test.

A similar fate befalls claims that his lawyer ineffectively protested the prosecutor's failure to present the purportedly exculpatory Fort Lauderdale receipt to the grand jury. Counsel did attempt to push that boulder up the mountain. Success on such a strategy is rare, given that, under New York law, the prosecution "generally enjoy[s] wide discretion in presenting [its] case to the Grand Jury and [is] not obligated ... to present all evidence in their possession that is favorable to the accused." People v. Lancaster, 69 N.Y.2d 20, 25-26, 511 N.Y.S.2d 559, 562, 503 N.E.2d 990, 993 (1986) (citation omitted). Particularly so on this point, counsel's lack of success is no measure of effectiveness.

Next on the list is petitioner's argument that trial counsel was ineffective for failing to object when the jury allegedly engaged in unauthorized after-hours deliberations. This contention is baseless. As the record establishes, the trial court's instructions regarding the jury's conduct after the case was submitted for deliberation were entirely routine. There was no

8

cause for any objection by defense counsel. There is also nothing in this record to suggest that circumstances required a special or supplemental charge.

Nor was counsel ineffective for failing to object to the trial court's <u>Allen</u> charge. <u>See</u> <u>Allen v. U.S.</u>, 164 U.S. 492, 17 S. Ct. 154 (1896). The charge was not unreasonable and included numerous statements informing jurors that they should change their minds only through deliberation and examination of the evidence and the law. (Tr. 1131-32, 1134.) Moreover, the <u>Allen</u> charge came only *after* the jury had reached its guilty verdicts on the six robbery and kidnapping counts; the charge encouraged the jury to continue deliberating on the seventh count for rape, for which petitioner was not convicted. In short, there was no supportable ground for objection; the failure to interpose a groundless objection is hardly evidence of ineffectiveness. <u>See</u> <u>Arena</u>, 180 F.3d at 396. Viewed in totality, insofar as Miller's petition targets his counsel's alleged deficiencies as a wellspring for relief, it is totally without merit.

### B.      The People's Failure to Introduce Exculpatory Evidence at Grand Jury

Petitioner builds on one of his claims of ineffectiveness to assert that his Sixth and Fourteenth Amendment rights were violated by the prosecution's failure to introduce exculpatory evidence, i.e., the Fort Lauderdale receipt, before the grand jury. However, alleged defects in state grand jury proceedings are effectively not reviewable in federal habeas cases, as any error is cured by conviction. <u>See</u> <u>Lopez v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1989) (holding that the prosecutor's alleged failure to develop exculpatory evidence before the grand jury was rendered harmless by the petit jury's conviction). Habeas relief cannot rest on these facts.

## C.    Right to Counsel Violated

Keeping focus on Sixth Amendment rights, Miller claims violation when his attorney was not notified prior to petitioner being placed in the April 30, 1997 lineup, which resulted in his identification by the crime victims. But since the right to counsel under federal law "attaches only at or after the time that adversary judicial proceedings have been initiated," Kirby v. Illinois, 406 U.S. 682, 688, 92 S. Ct. 1877, 1881 (1972), and since the subject lineup occurred before petitioner was charged, there is no Sixth Amendment violation.

## D.    Unduly Suggestive Lineup

Miller goes on to assert, however, that the same April 30, 1997 lineup was unduly suggestive because his distinctive print dress shirt set him apart from the other people in the lineup, violating his due process rights. In considering such a claim, the reviewing court must determine whether the lineup "unduly and unnecessarily suggested that the defendant was the perpetrator," and if not, there is no due process violation and no further inquiry is needed. Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001) (citing Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243 (1977)), cert. denied, 534 U.S. 1118, 122 S. Ct. 930 (2002); Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972). Additionally, assuming for argument that the lineup was unduly suggestive, there would still be no due process violation if the resulting identification "was nonetheless independently reliable." Raheem, 257 F.3d at 133. As for undue suggestiveness, it may exist where a "witness has emphasized a particular characteristic of the perpetrator in giving a description to the police" and in the lineup, "only the defendant ha[d] that characteristic." Id. at 134. For example, undue suggestiveness was not found where a defendant was the only lineup participant wearing a jacket but prior witnesses had not focused on a jacket in their descriptions

of the perpetrator.  Gilbert v. Superintendent of the Collins Correctional Facility, No. 03 Civ. 3866, 2004 WL 287683, at *12 (S.D.N.Y. Feb. 11, 2004).  Here, there was no mention of a print dress shirt in any of the witness descriptions of the perpetrator; on the contrary, the descriptions focused on a hooded sweatshirt.  The hoodless shirt petitioner wore in the lineup, regardless how otherwise distinctive, is no proof of suggestiveness.  Given that the lineup was not unduly suggestive, it is unnecessary to consider whether the independent reliability of the identification would have salvaged it anyway.  The adverse determinations of the state courts on this point were fully in accord with controlling Supreme Court precedent.

### E.    Prosecutorial Misconduct

The alleged prejudicial and inflammatory remarks of the prosecutor in the course of examination and summation form the gravamen of the misconduct claim.  Specifically, Miller points to: (1) a question on cross-examination of defense witness Margo Cole regarding Castillo having pled guilty (Tr. 975); (2) a statement in summation that Castillo was in jail "where he belongs" (Tr. 1052); and (3) a statement in summation that "[a]ny confusion that there might be is a result of the antics of the defense" (Id.).  All were considered and rejected by the state courts as meritless; that rejection was well within the bounds of constitutional requirements.

Federal habeas relief is limited to prosecutorial misconduct that "so infected the trial with unfairness" as to deny due process.  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (quotation omitted).  To find such misconduct, courts examine "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quotation omitted).  In line with these precedents, courts must determine whether any of the allegedly

improper comments were "minor aberrations in a prolonged trial" as opposed to "cumulative evidence of a proceeding dominated by passion and prejudice." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240, 60 S. Ct. 811, 852 (1940); see also United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.) ("[C]riminal convictions are not to be lightly overturned on the basis of a prosecutor's inappropriate comments standing alone in an otherwise fair proceeding."), cert. denied, 479 U.S. 827, 107 S. Ct. 104 (1986); Gatto v. Hoke, 809 F. Supp. 1030, 1040 (E.D.N.Y. 1992) ("A criminal conviction will not be overturned on the basis of a prosecutor's remarks in an otherwise fair proceeding.") (citing United States v. Young, 470 U.S. 1, 11, 105 S. Ct. 1038, 1044 (1985)). Moreover, improper comments are considered less egregious if they were "made in response to defense contentions." United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981); see also Moore v. Warden, Southport Correctional Facility, 380 F. Supp. 2d 321, 331 (S.D.N.Y. 2005) ("Where a prosecution comment is a rejoinder to defense counsel's comments, that factor ameliorates the effect of an objectionable prosecution comment upon the fairness of a trial.").

Here, the alleged misconduct was limited to a single question on cross-examination and two comments in summation, which were no worse than "minor aberrations in a prolonged trial." Socony-Vacuum, 310 U.S. at 240; see also U.S. v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981). More significantly, it is clear that all of the allegedly offending statements were direct responses to defense tactics. The cross-examination question regarding Castillo responded to defense counsel's direct of Ms. Cole, identified as Castillo's girlfriend, which sought to establish that Castillo, not petitioner, made the inculpatory phone calls on the night of the crime. (Tr. 964-72.) As for the prosecutor's comment about Castillo in summation, it was a direct answer to rhetorical questions posed by defense counsel's summation:

> Another thing, again, my client is charged with acting in concert with someone else. Where is that person. Where is the person whom he acted in concert with. Not here. He didn't testify. Where are my accusers. I hear you. That's reasonable doubt. Again, he was charged with aiding and abetting, that they were aiding and abetting each other. And he was supposed to be implicated by this person. But where is the person. Not here. And you have to take all these things into consideration when you arrive at a verdict in this case.

(Tr. 1017-18.) The prosecutor then responded in her summation: "The defense actually asked in his summation, where is Celso Castillo. Well, you heard from his own witness, ladies and gentlemen, that Celso Castillo pled guilty in this case. And I submit to you that he is where he belongs: In jail." (Tr. 1052.) Stated more critically, the defense asked the jury to speculate about the whereabouts of the accomplice. The fact that Castillo was incarcerated provided the answer to defense counsel's dubious request to the jury to consider his absence. On that basis, the prosecutor's factually correct comment, while perhaps unnecessarily theatrical and not grounded in record evidence, was mild and directly predicated on defense counsel's own comments on summation. As the Second Circuit held in a similar case, "[d]efendant cannot now complain about the issues raised and the atmosphere created by his own making through the defense summation." United States v. Tocco, 135 F.3d 116, 130 (2d Cir. 1998).

Petitioner fares no better in his attack on the prosecutor's comment regarding the "antics of the defense." Indeed, such comment was quite mild when compared to the instances in which courts have found prosecutorial misconduct, including the instances cited by petitioner. See Floyd, 907 F.2d at 355 (misleading the jury as to the standard of proof, vouching for one of the state's witnesses, and using the words "liar" or "lie" to describe the defendant over 40 times); United States v. Friedman, 909 F.2d 705, 707-08 (2d Cir. 1990) (making an ad hominem attack on defense counsel, stating that "he will make any argument he can to get to get that guy off," and suggesting that defense counsel would receive "high fees" for doing so); People v. Kent, 125

A.D.2d 590, 509 N.Y.S.2d 841 (2d Dep't 1986) (misleading the jury regarding the burden of proof and improperly maligning the defendant's decision not to testify); People v. Garcia, 40 A.D.2d 983, 338 N.Y.S.2d 476 (2d Dep't 1972) (making prejudicial comments alluding to the immigrant community where the crime took place). This last challenge fails resoundingly as well.

But even if the Court were to find that the prosecutor severely crossed the line in these three instances, any offense was cured by the trial judge's instructions to the jury. Pointedly, the judge properly instructed the jurors, among other routine charges designed to keep the jury fixed on the evidence and law only, that the lawyers' comments were not to be considered evidence and that they were free to adopt or to disregard any of the arguments made in summation. (Tr. 1006-08.) These standard instructions are of the kind that have been found to be an adequate cure to correct any prejudice arising from improper remarks made during summation. See, e.g., Moore, 380 F. Supp. 2d at 333 (S.D.N.Y. 2005).

Finally and conclusively, none of the alleged acts of prosecutorial misconduct cited by petitioner were prejudicial enough to alter the outcome, as the certainty of Miller's conviction was high given the clear evidence of guilt. Weighed against the phone calls to Miller's girlfriend from Ibe's mobile phone, Miller's palm print found inside Mariano's vehicle, and the unequivocal identifications of Miller by both victims, the possibility of prejudice from the prosecutor's comments was extremely low. See, e.g., Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [defendant] was not prejudiced by the prosecutor's improper remarks.") (citations omitted). The state court rejection of petitioner's prosecutorial misconduct claims was undoubtedly reasonable and must not be upset on habeas review.

14

## F.     Insufficient Evidence

Petitioner argues that there was insufficient evidence supporting his convictions for robbery because "the People failed to prove that he used or threatened the immediate use of force in taking or retaining any of the complainants' property." (Pet'r Br. 39.) The state courts found the argument meritless. Given the record here, federal constitutional precedents do not countenance disturbing that conclusion.

The standard for reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Petitioner "bears a very heavy burden" in meeting this standard. United States v. Rivalta, 892 F.2d 223, 227 (2d Cir. 1989) (citations omitted). "Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence ... and this evidence must not be reviewed piecemeal, but rather as a whole." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted). Moreover, "assessments of the weight of the evidence or the credibility of witnesses are for the jury" and courts must "defer to the jury's assessments of both of these issues." Id. (citations omitted).

Turning to petitioner's robbery convictions, the Court "must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). New York law provides: "Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: 1. Preventing or overcoming resistance to the taking of the property ... or 2. Compelling the owner of such property ... to

15

deliver up the property..." N.Y. Penal Law § 160.00. "A person is guilty of robbery in the first degree when he forcibly steals property" and when he "[i]s armed with a deadly weapon; or ... [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm..." N.Y. Penal Law § 160.15. "A person is guilty of robbery in the second degree when he forcibly steals property and when... [h]e is aided by another person actually present; or ... [d]isplays what appears to be a pistol, revolver, shotgun, machine gun or other firearm..." N.Y. Penal Law § 160.10. See also, e.g., People v. Urena, 46 A.D.3d 714, 848 N.Y.S.2d 234 (2d Dep't 2007).

Simply put, there was more than sufficient evidence adduced at trial to prove that Miller was guilty of forcible stealing while armed with a deadly weapon, or with the display of a firearm, as well as acting with an accomplice. Mariano testified that he was "grabbed," that his and Ibe's wallets were "take[n]," that Ibe's cell phone was "take[n]," and that Miller "point[ed] the gun [at Mariano's] side" and "told [him] not to do anything or he will shoot me." (Tr. 422.) Ms. Ibe testified that one of the assailants was "pointing a gun at John" and "[t]hey said oh, get back to our car, go back to your car or else we are going to shoot you." (Tr. 658.) Later, she testified, "[t]hey were just telling us that, you know, you better give us money ... you better have money in the bank or else we start shooting you." (Tr. 662.) She then added that the Miller threatened her with force if she did not take him to use the ATM:

> Q. And he was dragging you in the ATM or did you walk with him?
> A. I walk with him because he have a knife in his pocket on him. He said if I do something he will hurt me.
> Q. Could you see the knife at that time?
> A. Yes.
> Q. Where was it?
> A. In his – He was holding it and he sometimes put it in his pocket.

(Tr. 663.) The jury credited the clear testimony of the prosecution witnesses, which offered proof that petitioner used force and was armed with and brandished a gun and a knife, which he

used to threaten the victims and to compel them to give up their property, all clear examples of robbery under New York's penal law.

Conversely, Miller's characterizations of the evidence fail to carry the "very heavy burden" required under the habeas standard. Rivalta, 892 F.2d at 227. First, given the testimony quoted above, petitioner's contentions that Ibe never testified as to threats of force and that she walked to the ATM "on her own free will" (Pet'r Br. 41) are completely baseless. Second, petitioner asserts that the prosecution's case was fatally undermined by (1) differences between Mariano's and Ibe's accounts of the robbery and (2) the lack of bank records to corroborate the victims' testimony. However, to the extent that such discrepancies or weaknesses in the prosecution's case did exist, the law presumes that these differences were resolved by the jury in favor of the People; reviewing courts must defer to the jury's decision. See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). Furthermore, taking the evidence as a whole, as courts are required to do, Maldonado, 86 F.3d at 35, the victims' testimony about the crime was well corroborated by (a) the victims' reliable identification of Miller, (b) the discovery of Miller's palmprint inside Mariano's car, and (c) the phone call made to Miller's girlfriend within hours of the crime from Ibe's mobile phone. The evidence was more than sufficient to support petitioner's robbery convictions. The convictions do not offend Jackson.

## G. Withholding of **Brady** Material

The petition avers Brady violations, including the withholding of videos and still photographs from the ATM vestibule as well as the victims' bank records. The prosecution, of

course, is required to provide the defense with exculpatory evidence pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. There are three factors to be examined in any <u>Brady</u> analysis: "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." <u>United States v. Coppa</u>, 267 F.3d 132, 140 (2d Cir. 2001) (citation omitted). The prejudice is measured by whether the "nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." <u>Strickler v. Greene</u>, 527 U.S. 263, 281, 119 S. Ct. 1936, 1948 (1999).

Applying traditional <u>Brady</u> analysis, the failure with respect to the disclosure of the videos and the bank records did not violate <u>Brady</u> because the prosecution never had possession of these materials. Detective Adametz testified on cross-examination that she only received "video stills" from Chase Manhattan. (Tr. 981.) She also testified that she never received any written records of withdrawals from Chase. (Tr. 988). No <u>Brady</u> violation can exist where the prosecution never had possession of the subject material in the first place. <u>See, e.g.</u>, <u>United States v. Dohou</u>, No. 08-cr-5010, 2010 WL 2563407, at *2 (2d Cir. Jun. 24, 2010).

Petitioner also claims that the People failed to produce the still photographs from the ATM vestibule until a week before trial, and that these photographs were exculpatory, which the People deny. Yet even if it is assumed that the photographs were exculpatory but only disclosed a week before trial, such disclosure was not prejudicial. "It is not feasible or desirable to specify the extent or timing of disclosure <u>Brady</u> and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made." <u>Leka v. Portuondo</u>, 257 F.3d 89, 100 (2d Cir. 2001). The adequacy of the defense's opportunity to use the evidence is measured by, for example, whether the defense

18

needed to conduct further investigation in response to the disclosure, or whether a new witness was disclosed. Leka, 257 F.3d at 101. Here, the photographs did not require further investigation, and no new witness was revealed. Moreover, the defense was able to use the photographs to conduct an effective cross-examination of their sponsoring witness, Detective Adametz:

| | |
|---|---|
| Q | Detective Adametz, did you see Mr. Miller, Mr. Kurt Miller in any of those videos that you saw? |
| A | No. |
| Q | You see Kurt Miller on any of the stills of the video that you saw? |
| A | I can't say. (Tr. 551-52.) |

Any exculpatory value that the photographs or the videos had was thus effectively presented to the jury, despite whatever delays may or may not have occurred. There was no prejudice. There was thus no violation of Brady, and Brady provides no vehicle for federal habeas relief.

## H.    Ineffectiveness of Appellate Counsel

Miller also claims that his appellate counsel was ineffective for failing to argue the ineffectiveness of trial counsel concerning trial counsel's failure to submit a timely notice of alibi in accord with New York criminal procedure. The state courts' rejection of this effectiveness claim was reasonable, given that any such argument on direct appeal would have been futile. "A defense counsel's failure to file a timely notice of alibi ... cannot properly be addressed on direct appeal because it requires speculation as to facts outside the record, namely, 'the anticipated testimony of defendant's desired witnesses and their likely effectiveness in supporting an alibi defense.'" People v. Wright, 1 A.D.3d 707, 708, 766 N.Y.S.2d 730 (3d Dep't 2003) (quoting People v. McDonald, 255 A.D.2d 688, 688, 681 N.Y.S.2d 112 (3d Dep't 1998)). Appellate

counsel cannot be deemed ineffective for failing to raise a meritless argument. See Arena, 180 F.3d at 396 ("Failure to make a meritless argument does not amount to ineffective assistance.").

###   J.    Merger Doctrine

Petitioner's reply brief raises a late starter, that the merger doctrine precludes his conviction for kidnapping. The parties contest whether this claim was exhausted. But it is unnecessary to resolve this dispute, as the merger doctrine is a matter purely of state law and cannot be the basis of federal habeas relief. See, e.g., Gonzalez v. Miller, No. 01 CV 3968, 2002 U.S. Dist. LEXIS 25296, at *13 n.3 (E.D.N.Y. Jan. 2, 2002) ("[T]he merger doctrine 'is a state court judicial doctrine rather than a federal constitutional doctrine'" that "cannot provide a basis for federal habeas corpus relief.") (quoting Duncan v. Griener, No. 97 Civ. 8754, 1999 U.S. Dist. LEXIS 348, at *25 (S.D.N.Y. Jan. 19, 1999)). As with the litany of other claims Miller's habeas petition presents, this claim too affords no ground warranting habeas relief.

## IV.    CONCLUSION

For all of the foregoing reasons, Miller's petition for a writ of habeas corpus is dismissed with prejudice, and the writ is denied. Since Miller has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      November 30, 2010

ERIC N. VITALIANO
United States District Judge